In the United States District Court
for the Southern District of Texas
Houston Division

| | |
|---|---|
| Jacob Tafoya, Chandler Shamburg, Debralyn Duke, Crystal Sandle, Nolan Wright, Mario Shivers, and Marvin Alexander,<br><br>*on behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Ayvaz Pizza, LLC; Ayvaz Holdings, LLC, Dhanani Group of Companies, Inc.; Shoukat Dhanani; Usman Dhanani; Doe Corporation 1-10; John Doe 1-10<br><br>Defendants. | Case No. 4:25-CV-4421<br><br>Judge<br><br>Magistrate Judge<br><br>Jury Demand Endorsed Hereon |

Class and Collective Action Complaint

1. Jacob Tafoya, Chandler Shamburg, Debralyn Duke, Crystal Sandle, Nolan Wright, Mario Shivers, and Marvin Alexander ("Plaintiffs"), on behalf of themselves and similarly-situated individuals, bring this action against Defendants Ayvaz Pizza, LLC; Ayvaz Holdings, LLC; Dhanani Group of Companies, Inc.; Shoukat Dhanani; Usman Dhanani; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals

with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and in accordance with the state wage and common laws of Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia.

2. From on or about September 28, 2021, to present, Defendants have operated over 350 Pizza Hut locations across the United States. These stores are referred to throughout this Complaint as the "Ayvaz Pizza Hut Franchise Stores".

3. Plaintiffs seek to represent the delivery drivers who have worked at the Defendants' Ayvaz Pizza Hut Franchise Stores.

4. All delivery drivers at the Ayvaz Pizza Hut Franchise Stores, including Plaintiffs, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

5. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

6. Under 28 U.S.C. 1332(d), this Court has jurisdiction over the claims asserted because the matter in controversy exceeds $5 million and because members of the class are citizens of different states than Defendants.

7. This Court has personal jurisdiction over Defendants.

8. This Court has personal jurisdiction over Defendants because Defendants reside in the state of Texas.

9. This Court has personal jurisdiction over Ayvaz Pizza, LLC, Ayvaz Holdings, LLC, and Dhanani Group Inc. because they have consented to the Court's jurisdiction.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district and because a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiffs**

**Jacob Tafoya**

11. Plaintiff Jacob Tafoya is a resident of New Mexico.

12. Tafoya is an "employee" of all Defendants as defined by the FLSA and New Mexico wage and hour laws.

13. Tafoya has given written consent to join this action.

**Chandler Shamburg**

14. Plaintiff Chandler Shamburg is a resident of Virginia.

15. Shamburg is an "employee" of all Defendants as defined by the Virginia wage and hour laws.

**Debralyn Duke**

16. Plaintiff Debralyn Duke is a resident of Georgia.

17. Duke is an "employee" of all Defendants as defined in the FLSA.

18. Duke has given written consent to join this action.

**Crystal Sandle**

19. Plaintiff Crystal Sandle is a resident of Texas.

20. Sandle is an "employee" of all Defendants as defined by the FLSA.

21. Sandle has given written consent to join this action.

**Nolan Wright**

22. Plaintiff Nolan Wright is a resident of North Carolina.

23. Wright is an "employee" of all Defendants as defined by the FLSA and North Carolina wage and hour laws.

24. Wright has given written consent to join this action.

**Mario Shivers**

25. Plaintiff Mario Shivers is a resident of Florida.

26. Shivers is an "employee" of all Defendants as defined by the FLSA and Florida wage and hour laws.

27. Shivers has given written consent to join this action.

**Marvin Alexander**

28. Plaintiff Marvin Alexander is a resident of South Carolina.

29. Alexander is an "employee" of all Defendants as defined by the FLSA and South Carolina wage and hour laws.

30. Alexander has given written consent to join this action.

**Defendants**

31. Plaintiffs seek to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of the Ayvaz Pizza Hut Franchise Stores in relation to Plaintiffs and similarly situated delivery drivers.

32. Defendant Ayvaz Pizza, LLC makes up part of the organized group of persons who act or have acted directly or indirectly in the interest of the Ayvaz Pizza Hut Franchise Stores in relation to Plaintiffs and similarly situated delivery drivers.

33. To the extent additional entities or individuals make up part of the organized group of persons who act or have acted directly or indirectly in the interest of the Ayvaz Pizza Hut Franchise Stores in relation to Plaintiffs and similarly situated delivery drivers, Plaintiffs seek to hold those entities or individuals liable as “employers” for the violations alleged herein.

34. Upon information and belief, Shoukat Dhanani, Usman Dhanani, together with other members of the Dhanani Family and other individuals, own and operate the Ayvaz Pizza Hut Franchise Stores through various legal entities. For example, upon information and belief, for some or all of the relevant time period, Dhanani Group of Companies, Inc. is an umbrella company that holds all of the Dhanani Family businesses, including Pizza Hut, Burger King, Popeyes, and La Madeleine franchises. Upon information and belief, for some or all of the relevant time period, Ayvaz Holdings, LLC is an LLC that holds many of the Pizza Hut franchise organization’s valuable assets, e.g., real estate, contracts, and the right to some or all profits. Upon information and belief, for some or all of the relevant time period, Ayvaz Pizza, LLC is an LLC that operates the stores, including providing direct wage payment and expense reimbursement payments to the employees. All of these entities, and any others used in the operation of the Ayvaz Pizza Hut Franchise Stores are “employers” under the FLSA and various state laws and are liable for the claims asserted here.

**Ayvaz Pizza, LLC**

35. Defendant Ayvaz Pizza, LLC is a domestic limited liability company, registered and authorized to do business under the laws of the state of Texas, with its principal place of business at 4415 Highway 6, Sugarland, TX 77478.

36. Ayvaz Pizza, LLC has consented to the Court's general personal jurisdiction.

37. Upon information and belief, Ayvaz Pizza, LLC owns and operates Pizza Hut Pizza stores in Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia.

38. Ayvaz Pizza, LLC is one of the entities that has entered into a franchise agreement with Pizza Hut to operate the Ayvaz Pizza Hut Franchise Stores.

39. Ayvaz Pizza, LLC may command where, when, and how much labor is performed by the delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

40. Ayvaz Pizza, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

41. Upon information and belief, Ayvaz Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

42. Ayvaz Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

43. At all relevant times, Ayvaz Pizza, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

44. Ayvaz Pizza, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

45. At all relevant times, Ayvaz Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

46. Ayvaz Pizza, LLC's gross revenue exceeds $500,000 per year.

**Ayvaz Holdings, LLC**

47. Defendant Ayvaz Holdings, LLC is a foreign limited liability company with its principal place of business at 17890 Blanco Rd., Ste 401, San Antonio, TX 78232.

48. Ayvaz Holdings, LLC has consented to the Court's general personal jurisdiction.

49. Upon information and belief, Ayvaz Holdings, LLC owns and operates Pizza Hut Pizza stores in Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia.

50. Ayvaz Holdings LLC is one of the entities that has entered into a franchise agreement with Pizza Hut to operate the Ayvaz Pizza Hut Franchise Stores.

51. Ayvaz Holdings, LLC may command where, when, and how much labor is performed by the delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

52. Ayvaz Holdings, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

53. Upon information and belief, Ayvaz Holdings, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

54. Ayvaz Holdings LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

55. At all relevant times, Ayvaz Holdings, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

56. Ayvaz Holdings, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

57. At all relevant times, Ayvaz Holdings, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

58. Ayvaz Holdings, LLC's gross revenue exceeds $500,000 per year.

**Dhanani Group of Companies, Inc.**

59. Defendant Dhanani Group of Companies, Inc. is a domestic limited liability company with its principal place of business at 4415 Highway 6, Sugar Land, TX 77478.

60. Dhanani Group of Companies, Inc. has consented to the Court's general personal jurisdiction.

61. Upon information and belief, Dhanani Group of Companies, Inc. owns and operates Pizza Hut Pizza stores in Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia.

62. Dhanani Group of Companies, Inc. is one of the entities that has entered into a franchise agreement with Pizza Hut to operate the Ayvaz Pizza Hut Franchise Stores.

63. Dhanani Group of Companies, Inc. may command where, when, and how much labor is performed by the delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

64. Dhanani Group of Companies, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

65. Upon information and belief, Dhanani Group of Companies, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

66. Dhanani Group of Companies, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

67. At all relevant times, Dhanani Group of Companies, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

68. Dhanani Group of Companies, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

69. At all relevant times, Dhanani Group of Companies, Inc. has been and continues to be an enterprise engaged in “the production of goods for commerce” within the meaning of the phrase as used in the FLSA.

70. Dhanani Group of Companies, Inc.’s gross revenue exceeds $500,000 per year.

**Shoukat Dhanani**

71. Shoukat Dhanani is a founder and CEO of Ayvaz Pizza, LLC.

72. Shoukat Dhanani is a person who has entered into a franchise agreement with Pizza Hut to operate the Ayvaz Pizza Hut Franchise Stores.

73. Shoukat Dhanani is the founder and CEO of Ayvaz Pizza, LLC.

74. Shoukat Dhanani may command where, when, and how much labor is performed by the delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

75. Shoukat Dhanani is individually liable to the Ayvaz Pizza Hut Franchise Stores’ delivery drivers under the definitions of “employer” set forth in the FLSA and Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia law because he owns and operates the Ayvaz Pizza Hut Franchise Stores, serves as a manager of Ayvaz Pizza, LLC, ultimately controls significant aspects of the Ayvaz Pizza Hut Franchise Stores’ day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

76. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had financial control over the operations at each of the Ayvaz Pizza Hut Franchise Stores.

77. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has a role in significant aspects of the Ayvaz Pizza Hut Franchise Stores' day to day operations.

78. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had control over the Ayvaz Pizza Hut Franchise Stores' pay policies.

79. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had power over personnel and payroll decisions at the Ayvaz Pizza Hut Franchise Stores, including but not limited to influence of delivery driver pay.

80. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to hire, fire and discipline employees, including delivery drivers at Ayvaz Pizza Hut Franchise Stores.

81. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to stop any illegal pay practices that harmed delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

82. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to transfer the assets and liabilities of the Ayvaz Pizza Hut Franchise Stores.

83. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to declare bankruptcy on behalf of the Ayvaz Pizza Hut Franchise Stores.

84. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to enter into contracts on behalf of each of the Ayvaz Pizza Hut Franchise Stores.

85. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to close, shut down, and/or sell each of the Ayvaz Pizza Hut Franchise Stores.

86. At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani had authority over the overall direction of each of Ayvaz Pizza Hut Franchise Stores and was ultimately responsible for their operations.

87. The Ayvaz Pizza Hut Franchise Stores function for Shoukat Dhanani's profit.

88. Shoukat Dhanani has influence over how the Ayvaz Pizza Hut Franchise Stores can run more profitably and efficiently.

89. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Ayvaz Pizza Hut Franchise Stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

90. Upon information and belief, Shoukat Dhanani owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

91. Upon information and belief, Ayvaz Holdings, LLC, Dhanani Group Inc., the Dhanani Group of Companies, Inc., Haza Foods, and other entities owned or operated in whole or in part by Shoukat Dhanani may be liable for the claims asserted here.

92. Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Ayvaz Pizza Hut Franchise Stores.

93. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

94. Upon information and belief, Shoukat Dhanani has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

95. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Usman Dhanani**

96. Usman Dhanani is the President of Ayvaz Pizza, LLC.

97. Usman Dhanani is a person who has entered into a franchise agreement with Pizza Hut to operate the Ayvaz Pizza Hut Franchise Stores.

98. Usman Dhanani may command where, when, and how much labor is performed by the delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

99. Usman Dhanani is individually liable to the Ayvaz Pizza Hut Franchise Stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado, Florida, Georgia, Iowa, New Mexico, North Carolina, South Carolina, Texas and Virginia law because he owns and operates the Ayvaz Pizza Hut Franchise Stores, serves as a manager of Ayvaz Pizza, LLC, ultimately controls significant aspects of the Ayvaz Pizza Hut Franchise Stores' day-to-day

functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

100. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had financial control over the operations at each of the Ayvaz Pizza Hut Franchise Stores.

101. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has a role in significant aspects of the Ayvaz Pizza Hut Franchise Stores' day to day operations.

102. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had control over the Ayvaz Pizza Hut Franchise Stores' pay policies.

103. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had power over personnel and payroll decisions at the Ayvaz Pizza Hut Franchise Stores, including but not limited to influence of delivery driver pay.

104. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to hire, fire and discipline employees, including delivery drivers at Ayvaz Pizza Hut Franchise Stores.

105. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to stop any illegal pay practices that harmed delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

106. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to transfer the assets and liabilities of the Ayvaz Pizza Hut Franchise Stores.

107. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to declare bankruptcy on behalf of the Ayvaz Pizza Hut Franchise Stores.

108. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to enter into contracts on behalf of each of the Ayvaz Pizza Hut Franchise Stores.

109. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani has had the power to close, shut down, and/or sell each of the Ayvaz Pizza Hut Franchise Stores.

110. At all relevant times, by virtue of his role as President of Ayvaz Pizza, LLC, Usman Dhanani had authority over the overall direction of each of Ayvaz Pizza Hut Franchise Stores and was ultimately responsible for their operations.

111. The Ayvaz Pizza Hut Franchise Stores function for Usman Dhanani's profit.

112. Usman Dhanani has influence over how the Ayvaz Pizza Hut Franchise Stores can run more profitably and efficiently.

113. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Ayvaz Pizza Hut Franchise Stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

114. Upon information and belief, Usman Dhanani owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

115. Upon information and belief, Ayvaz Holdings, LLC, Dhanani Group Inc., the Dhanani Group of Companies, Inc., Haza Foods, and other entities owned or operated in whole or in part by Usman Dhanani may be liable for the claims asserted here.

116. Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Ayvaz Pizza Hut Franchise Stores.

117. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

118. Upon information and belief, Usman Dhanani has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Ayvaz Pizza Hut Franchise Stores as that term is defined by the FLSA and state wage and hour laws.

The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

119. Since September 28, 2021, Defendants have operated the Ayvaz Pizza Hut Franchise Stores.

120. Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

121. All delivery drivers employed at the Ayvaz Pizza Hut Franchise Stores have had essentially the same job duties.

122. The delivery drivers at the Ayvaz Pizza Hut Franchise Stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

123. Plaintiffs' claims in this lawsuit relate to the time worked while on the road making deliveries.

124. The delivery drivers' on-the-road job duties were not related to their inside job duties.

125. The delivery drivers' on-the-road job duties were not completed contemporaneously with their inside duties.

126. When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Ayvaz Pizza Hut Franchise Stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

127. Plaintiffs and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while on the road making deliveries for Ayvaz Pizza Hut Franchise Stores.

128. Defendants require delivery drivers at Ayvaz Pizza Hut Franchise Stores to provide cars to use while completing deliveries for Defendants.

129. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

130. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, insurance, financing charges, licensing and registration costs, storage costs, cell phone costs, data charges, and other equipment necessary for delivery drivers to complete their job duties.

131. Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase vehicles, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, incur storage charges, and incur cell phone and data charges all for the benefit of Defendants.

132. From the beginning of the relevant time period until approximately May 2022, Plaintiffs and similarly situated delivery drivers received a per-delivery payment for each delivery they completed for Ayvaz Pizza Hut Franchise Stores as reimbursement for vehicle-related expenses.

133. Since approximately May 2022, Plaintiffs and similarly situated delivery drivers have received a per-mile payment for each mile they drive while making deliveries as reimbursement for vehicle-related expenses.

134. Upon information and belief, the per-delivery reimbursement rate in place until May 2022 resulted in an approximate average of $.25 per mile driven.

135. The per-mile reimbursements rates have varied slightly based on car and location since May 2022.

136. The Ayvaz Pizza Hut Franchise Stores did not attempt to determine their delivery drivers' actual expenses or to estimate the actual expenses.

137. Since May 2022, Defendants have relied on a third party, Motus, to set their reimbursement rates. The rates provided by Motus are not designed to capture all of the delivery drivers' expenses, do not capture all of the delivery drivers' expenses, and undervalue many of the delivery drivers' expenses that it does attempt to account for.

138. Ayvaz Pizza Hut Franchise Stores do not reimburse delivery drivers for their actual expenses.

139. Ayvaz Pizza Hut Franchise Stores' reimbursement payments are not based on the actual expenses incurred by the delivery drivers.

140. Ayvaz Pizza Hut Franchise Stores do not reimburse delivery drivers for their actual vehicle-related expenses in the workweek when the expenses are incurred.

141. Ayvaz Pizza Hut Franchise Stores do not track or record the delivery drivers' actual expenses.

142. Ayvaz Pizza Hut Franchise Stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

143. Ayvaz Pizza Hut Franchise Stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

144. Ayvaz Pizza Hut Franchise Stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for relating to vehicles used for Defendants' business.

145. Ayvaz Pizza Hut Franchise Stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

146. Ayvaz Pizza Hut Franchise Stores do not collect receipts of delivery drivers' automobile registration costs.

147. Ayvaz Pizza Hut Franchise Stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

148. Ayvaz Pizza Hut Franchise Stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

149. The Ayvaz Pizza Hut Franchise Stores do not reimburse their delivery drivers for the purchase price of their vehicle.

150. With respect to expenses incurred in relation to a vehicle a delivery driver used during his/her employment with Defendants, but incurred before the delivery driver began his/her employment with Defendants, Defendants did not reimburse the delivery driver for these vehicle-related expenses in the delivery driver's first week of employment.

151. The Ayvaz Pizza Hut Franchise Stores do not reimburse their delivery drivers for the actual costs of repairs and maintenance.

152. The Ayvaz Pizza Hut Franchise Stores do not reimburse or compensate their delivery drivers for the time and effort associated with maintaining the delivery drivers' vehicles.

153. The Ayvaz Pizza Hut Franchise Stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

154. The Ayvaz Pizza Hut Franchise Stores do not reasonably approximate the delivery drivers' expenses.

155. The Ayvaz Pizza Hut Franchise Stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

156. Rather than meeting their burden to comply with the FLSA, and keep relevant records associated with that compliance, the Ayvaz Pizza Hut Franchise Stores put the onus on their minimum wage delivery drivers to present evidence of and prove that that the vehicle expense reimbursement payments were not sufficient.

157. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been, for example:

a. 2021: 56 cents/mile
b. January to June 2022: 58.5 cents/mile
c. July to December 2022: 62.5 cents/mile
d. 2023: 65.5 cents/mile
e. 2024: 67 cents/mile
f. 2025: 70 cents/mile

158. During some or all of the relevant time period, the delivery drivers at the Ayvaz Pizza Hut Franchise Stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate, *e.g.*, cell phone and data charges.

159. Given the nature of the driving being completed by pizza delivery drivers, the delivery drivers at the Ayvaz Pizza Hut Franchise Stores incur more in expenses than an average driver. For example, very little of their driving is highway driving, they are turning their car off and on frequently, they are starting and stopping frequently, and they are transporting a fragrant and potentially messy product.

160. The delivery drivers at the Ayvaz Pizza Hut Franchise Stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

161. Defendants reimburse their delivery drivers amounts less than they would have had to pay if they had rented vehicles each day to use to make deliveries.

162. Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

163. Defendants benefit from the delivery drivers at the Ayvaz Pizza Hut Franchise Stores spending time off the clock repairing and maintaining their vehicles.

164. Defendants benefit from delivery drivers at the Ayvaz Pizza Hut Franchise Stores taking on the risk of using their vehicles to drive for Defendants' business.

165. Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

166. As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and state law.

167. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Ayvaz Pizza Hut Franchise Stores.

168. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

169. Defendants have willfully failed to pay federal and state minimum wage to Plaintiffs and similarly situated delivery drivers at the Ayvaz Pizza Hut Franchise Stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

**Plaintiffs' Individual Factual Allegations**

170. Plaintiff Jacob Tafoya worked at Defendants' Pizza Hut store located on Juan Tabo in Albuquerque, New Mexico from approximately early 2022 until approximately mid-2022.

171. When Tafoya was not delivering food, he worked inside the restaurant. His work inside the restaurant included cleaning, preparing food, sweeping, and completing other duties inside the restaurant as necessary.

172. Tafoya worked dual jobs.

173. Tafoya's inside duties were not related to his delivery duties.

174. Tafoya's inside duties were not completed contemporaneously with his delivery duties.

175. Tafoya was required to use his own car to deliver pizzas.

176. Tafoya was required to use his own cell phone when delivering pizzas.

177. Tafoya was reimbursed for vehicle expenses at a rate of $1.50 per delivery, then later, $.19 per mile.

178. Tafoya was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

179. Tafoya was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

180. Tafoya has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

automobile financing, licensing and registration costs, and incur cell phone and data charges all for the benefit of the Defendants.

181. Defendants did not track the actual expenses incurred by Tafoya.

182. Defendants did not ask Tafoya to provide receipts of the expenses he incurred while delivering pizzas for them.

183. Defendants did not reimburse Tafoya based on his actual delivery-related expenses.

184. Defendants did not reimburse Tafoya for the purchase price of his car.

185. Tafoya was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

186. Defendants did not reimburse Tafoya based on a reasonable approximation of his expenses.

187. Tafoya drove approximately 3 miles per delivery.

188. Tafoya completed approximately 2 deliveries per hour he worked on the road.

189. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Tafoya by $.395 per mile ($.585 - $.19). Considering Tafoya's estimate of 3 miles per delivery, Defendants under-reimbursed him $1.185 per delivery ($.395 x 3 miles), and $2.37 per hour (2 deliveries per hour).

190. Defendants have failed to pay Tafoya minimum wage as required by law.

191. Chandler Shamburg worked at Defendants' Pizza Hut store located in Woodstock, Virginia from August 4, 2021, until approximately early 2022.

192. When Shamburg was not delivering food, he worked inside the restaurant. His work inside the restaurant included cleaning, preparing food, sweeping, and completing other duties inside the restaurant as necessary.

193. Shamburg worked dual jobs.

194. Shamburg's inside duties were not related to his delivery duties.

195. Shamburg's inside duties were not completed contemporaneously with his delivery duties.

196. Shamburg was required to use his own car to deliver pizzas.

197. Shamburg was required to use his own cell phone when delivering pizzas.

198. Shamburg was reimbursed for vehicle expenses at a per-mile or per-delivery rate that resulted in him receiving less than his actual expenses and less than the IRS standard business mileage rate for each mile he drove.

199. Shamburg was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

200. Shamburg was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

201. Shamburg has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

automobile financing, licensing and registration costs, and incur cell phone and data charges all for the benefit of the Defendants.

202. Defendants did not track the actual expenses incurred by Shamburg.

203. Defendants did not ask Shamburg to provide receipts of the expenses he incurred while delivering pizzas for them.

204. Defendants did not reimburse Shamburg based on his actual delivery-related expenses.

205. Defendants did not reimburse Shamburg for the purchase price of his car.

206. Shamburg was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

207. Defendants did not reimburse Shamburg based on a reasonable approximation of his expenses.

208. Shamburg drove approximately 10 miles per delivery.

209. Shamburg completed approximately 3 deliveries per hour he worked on the road.

210. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At an approximate reimbursement rate of $1.25 per delivery, Defendants reimbursed Shamburg about $.125 per mile ($1.25 / 10 miles per delivery). Using the IRS rate as the proper reimbursement rate, Defendants under-reimbursed Shamburg by $.46 per mile ($.585-$.125), $4.60 per delivery ($.46 × 10 miles), and $13.80 per hour ($4.60 × 3 deliveries per hour).

211. Defendants have failed to pay Shamburg minimum wage as required by law.

212. Plaintiff Debralyn Duke worked at Defendants' Pizza Hut store located in Acworth, Georgia from 2021 until approximately March 2022.

213. When Duke was not delivering food, she worked inside the restaurant. Her work inside the restaurant included stocking coolers, sweeping, and completing other duties inside the restaurant as necessary.

214. Duke worked dual jobs.

215. Duke's inside duties were not related to her delivery duties.

216. Duke's inside duties were not completed contemporaneously with her delivery duties.

217. Duke was required to use her own car to deliver pizzas.

218. Duke was required to use her own cell phone when delivering pizzas.

219. Duke was reimbursed for vehicle expenses at a rate of $1.25 per delivery, then later, $.29 per mile.

220. Duke was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

221. Duke was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

222. Duke has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the benefit of the Defendants.

223. Defendants did not track the actual expenses incurred by Duke.

224. Defendants did not ask Duke to provide receipts of the expenses she incurred while delivering pizzas for them.

225. Defendants did not reimburse Duke based on her actual delivery-related expenses.

226. Defendants did not reimburse Duke for the purchase price of her car.

227. Defendants did not reimburse Duke for her vehicle-related expenses in the workweek when she incurred them.

228. Duke was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

229. Defendants did not reimburse Duke based on a reasonable approximation of her expenses.

230. Duke drove approximately 6 miles per delivery.

231. Duke completed approximately 4.5 deliveries per hour she worked on the road.

232. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Duke by $.295 per mile ($.585 - $.29). Considering Duke's estimate of 6 miles per delivery, Defendants under-reimbursed her $1.77 per delivery ($.295 x 6 miles), and $7.97 per hour (4.5 deliveries per hour).

233. Defendants have failed to pay Duke minimum wage as required by law.

234. Plaintiff Crystal Sandle worked at the Pizza Hut store in Missouri City, Texas owned and operated by Defendants from 2020 to June 2023.

235. Sandle worked dual jobs: one job where Sandle was on the road making deliveries and receiving tips, and another job when Sandle helped with tasks inside the store and did not receive tips.

236. Sandle was paid minimum wage or slightly above minimum wage for hours worked on the road making deliveries.

237. When Sandle was not delivering food, she worked inside the restaurant. Her work inside the restaurant includes doing dishes, cleaning, folding boxes, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

238. Sandle was required to use her own car to deliver pizzas.

239. Sandle was reimbursed for vehicle expenses at a rate of $1.25 per delivery for most of her employment by Defendants.

240. Toward the end of her employment, Sandle began receiving a per-mile amount that was less than the IRS rate.

241. Sandle drove approximately 4-5 miles per delivery.

242. Sandle completed approximately 5-10 deliveries per hour.

243. Sandle was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

244. Sandle was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

245. Sandle has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the benefit of Defendants.

246. Defendants did not track the actual expenses incurred by Sandle.

247. Defendants did not ask Sandle to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

248. Defendants did not reimburse Sandle based on her actual delivery-related expenses.

249. Defendants did not reimburse Sandle for the purchase price of the vehicle(s) she used to make deliveries.

250. Defendants did not reimburse Sandle for the actual vehicle-related expenses she incurred during the workweek when she incurred them.

251. Sandle was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

252. Defendants did not reimburse Sandle based on a reasonable approximation of her expenses.

253. In 2021, for example, the IRS business mileage reimbursement was $.56 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Sandle's estimate of 4.5 miles per delivery, Defendants reimbursed Sandle $.28 per mile ($1.25 per delivery / 4.5 miles

per delivery). As a result, Sandle estimates that Defendants under-reimbursed her by $.28 per mile ($.56-$.28=$.28), $1.26 per delivery ($.28 × 4.5 miles per delivery), and $9.45 per hour ($1.26 × 7.5 deliveries per hour).

254. Defendants failed to pay Sandle minimum wage as required by law.

255. Plaintiff Nolan Wright worked at Defendants' Pizza Hut store located in Greensboro, North Carolina from approximately 2020 until approximately August 2022.

256. When Wright was not delivering food, he worked inside the restaurant. His work inside the restaurant included cleaning, preparing food, sweeping, and completing other duties inside the restaurant as necessary.

257. Wright worked dual jobs.

258. Wright's inside duties were not related to his delivery duties.

259. Wright's inside duties were not completed contemporaneously with his delivery duties.

260. Wright was required to use his own car to deliver pizzas.

261. Wright was required to use his own cell phone when delivering pizzas.

262. Wright was reimbursed for vehicle expenses at a rate of $.89 per delivery, then later, $1.25 per delivery.

263. Wright was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

264. Wright was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

265. Wright has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the benefit of the Defendants.

266. Defendants did not track the actual expenses incurred by Wright.

267. Defendants did not ask Wright to provide receipts of the expenses he incurred while delivering pizzas for them.

268. Defendants did not reimburse Wright based on his actual delivery-related expenses.

269. Defendants did not reimburse Wright for the purchase price of his car.

270. Wright was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

271. Defendants did not reimburse Wright based on a reasonable approximation of his expenses.

272. Wright drove approximately 7.5 miles per delivery.

273. Wright completed approximately 5 deliveries per hour he worked on the road.

274. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 7.5 miles per delivery, Defendants reimbursed Plaintiff $.166 per mile ($1.25 per delivery / 7.5 miles per delivery). As a result, Plaintiff estimates that Defendants under-

reimbursed him by $.419 per mile ($.585-$.166=$.419), $3.14 per delivery ($.419 × 7.5 miles per delivery), and $15.70 per hour ($3.14 × 5 deliveries per hour)

275. Defendants have failed to pay Wright minimum wage as required by law.

276. Plaintiff Mario Shivers worked at Defendants' Pizza Hut store located in Fort Walton Beach, Florida from May 9, 2020, until approximately April 2023.

277. When Shivers was not delivering food, he worked inside the restaurant. His work inside the restaurant included cleaning, preparing food, sweeping, and completing other duties inside the restaurant as necessary.

278. Shivers worked dual jobs.

279. Shivers' inside duties were not related to his delivery duties.

280. Shivers' inside duties were not completed contemporaneously with his delivery duties.

281. Shivers was required to use his own car to deliver pizzas.

282. Shivers was required to use his own cell phone when delivering pizzas.

283. Shivers was reimbursed for vehicle expenses at a rate of $.89 per delivery when he first started for Defendants and then it transitioned to $1.25 per delivery in approximately early 2021.

284. In September 2021, when Defendants took over, Shivers was reimbursed approximately $.25 per mile until the end of his employment.

285. Shivers was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

286. Shivers was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

287. Shivers has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the benefit of the Defendants.

288. Defendants did not track the actual expenses incurred by Shivers.

289. Defendants did not ask Shivers to provide receipts of the expenses he incurred while delivering pizzas for them.

290. Defendants did not reimburse Shivers based on his actual delivery-related expenses.

291. Defendants did not reimburse Shivers for the purchase price of his car.

292. Shivers was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

293. Defendants did not reimburse Shivers based on a reasonable approximation of his expenses.

294. Shivers drove approximately 5.5 miles per delivery.

295. Shivers completed approximately 4.5 deliveries per hour he worked on the road.

296. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard

business mileage reimbursement rate, Defendants' policy under-reimbursed Shivers by $.335 per mile ($.585 - $.25). Considering Shivers' estimate of 5.5 miles per delivery, Defendants under-reimbursed him $1.84 per delivery ($.335 x 5.5 miles), and $8.28per hour (4.5 deliveries per hour).

297. Defendants have failed to pay Shivers minimum wage as required by law.

298. Plaintiff Marvin Alexander works at Defendants' Pizza Hut store located in Seneca, South Carolina and has since May 18, 2021.

299. When Alexander is not delivering food, he works inside the restaurant. His work inside the restaurant includes cleaning, preparing food, sweeping, and completing other duties inside the restaurant as necessary.

300. Alexander works dual jobs.

301. Alexander's inside duties are not related to his delivery duties.

302. Alexander's inside duties are not completed contemporaneously with his delivery duties.

303. Alexander is required to use his own car to deliver pizzas.

304. Alexander is required to use his own cell phone when delivering pizzas.

305. Alexander was reimbursed for vehicle expenses at a rate of $1.25 per delivery. He now is reimbursed, $.30 per mile.

306. Alexander is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

307. Alexander is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

308. Alexander has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the benefit of the Defendants.

309. Defendants do not track the actual expenses incurred by Alexander.

310. Defendants do not ask Alexander to provide receipts of the expenses he incurs while delivering pizzas for them.

311. Defendants did not reimburse Alexander based on his actual delivery-related expenses.

312. Defendants did not reimburse Alexander for the purchase price of his car.

313. Alexander is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

314. Defendants do not reimburse Alexander based on a reasonable approximation of his expenses.

315. Alexander drives approximately 10 miles per delivery.

316. Alexander completes approximately 2.5 deliveries per hour he works on the road.

317. In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Alexander by $.285 per mile ($.585 - $.30). Considering Alexander's estimate of 10 miles per delivery, Defendants

under-reimbursed him $2.85 per delivery ($.285 x 10 miles), and $7.125 per hour (2.5 deliveries per hour).

318. Defendants have failed to pay Alexander minimum wage as required by law.

**Collective Action Allegations**

319. Plaintiffs bring the First Count on behalf of themselves and

> All similarly situated current and former delivery drivers employed at the Ayvaz Pizza Hut Franchise Stores at any time from September 28, 2021, to the date of final judgment in this matter who elect to opt-in to this action (the "FLSA Collective").

320. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to pay Plaintiffs and the FLSA Collective minimum wages for all hours worked because they required Plaintiffs and the FLSA Collective to provide cars for business use without adequate reimbursement. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

321. Defendants' unlawful conduct is pursuant to a company policy or practice.

322. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

323. Defendants' unlawful conduct has been widespread, repeated, and consistent.

324. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

325. The members of the FLSA Collectives are readily identifiable and ascertainable.

326. In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

**Class Action Allegations**

327. Plaintiffs bring the Second, Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Virginia at any time from September 28, 2021, to the date of final judgment in this matter ("Virginia Class").

328. Plaintiffs bring the Sixth Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at Ayvaz Pizza Hut Franchise Stores in the State of Georgia between the date four years prior to the filing of the original complaint and the date of final judgment in this matter ("Georgia Class").

329. Plaintiffs bring the Seventh Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at Ayvaz Pizza Hut Franchise Stores in the State of Texas any time from September 28, 2021, to the date of final judgment in this matter ("Texas Class").

330. Plaintiffs bring the Eighth and Ninth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at the Ayvaz Pizza Hut Franchise Stores in the State of Florida between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Florida Class").

331. Plaintiffs bring the Tenth and Eleventh Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at Ayvaz Pizza Hut Franchise Stores in the State of South Carolina any time from September 28, 2021, to the date of final judgment in this matter ("South Carolina Class").

332. Plaintiffs bring the Twelfth, Thirteenth, and Fourteenth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants in the State of North Carolina any time from September 28, 2021, to the date of final judgment in this matter ("North Carolina Class").

333. Plaintiffs bring Fifteenth, Sixteen, and Seventeenth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut Franchise stores in the State of New Mexico between the date the alleged violation commenced until the date of final judgment in this matter as to the Defendants ("New Mexico Wage Class").

334. Plaintiffs bring the Eighteenth Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Pizza Hut Franchise stores owned, operated, and controlled by Defendants in New Mexico, between the date four years prior to the filing of the original complaint and the date of final judgment in this matter (the "New Mexico Unjust Enrichment Class").

335. Plaintiffs bring the Nineteenth and Twentieth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Pizza Hut Franchise stores owned, operated, and controlled by Defendants in Iowa, any time

> from September 28, 2021, to the date of final judgment in this matter (the "Iowa Class").

336. Plaintiffs bring the Twenty-First Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Pizza Hut Franchise stores owned, operated, and controlled by Defendants in Iowa, between the date five years prior to the filing of the original complaint and the date of final judgment in this matter (the "Iowa Unjust Enrichment Class").

337. Plaintiffs bring the Twenty-Second, Twenty-Third, and Twenty-Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Pizza Hut Franchise stores owned, operated, and controlled by Defendants in Colorado, between the date six years prior to the filing of the original complaint and the date of final judgment in this matter (the "Colorado Wage Class").

338. Plaintiffs bring the Twenty-Fifth Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of: -

> All current and former delivery drivers employed at the Defendants' Pizza Hut Franchise stores owned, operated, and controlled by Defendants in Colorado, any time from September 28, 2021, to the date of final judgment in this matter (the "Colorado Unjust Enrichment Class").

339. The Georgia Class, the Texas Class, the Florida Class, the South Carolina Class, the North Carolina Class, the New Mexico Wage Class, the New Mexico Unjust Enrichment Class, the Virginia Class, the Iowa Wage Class, the Iowa Unjust Enrichment Class, the Colorado Wage Class and the Colorado Unjust Enrichment Class are collectively referred to herein as the "Rule 23 Classes" and the members of the Rule 23 Classes are referred to as the "Rule 23 Class Members."

340. Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

341. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

342. The hours assigned and worked, the positions held, deliveries completed, miles driven, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

343. All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

344. For the purpose of notice, and other purposes related to this action, the Rule 23 Class members' names and contact information are readily available from Defendants.

345. Notice can be provided by means permissible under Rule 23.

346. The members of each of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

347. There are more than 50 members of each of the Rule 23 Classes.

348. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

349. Plaintiffs and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein.

350. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with state wage and common law.

351. Plaintiffs and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

352. Plaintiffs are able to fairly and adequately protect the interests of Rule 23 Classes and have no interests antagonistic to the Rule 23 Classes.

353. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

354. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

355. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

356. The Rule 23 Classes can be treated as subclasses pursuant to Rule 23(c)(5).

357. Common questions of law and fact exist as to the Rule 23 Classes that predominate over any questions only affecting Plaintiffs and the members of the Rule 23 Classes individually and include, but are not limited to:

a. Whether Defendants subjected Plaintiffs and the Rule 23 Class members to common policies that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

b. Whether Plaintiffs and the Rule 23 Class members incurred vehicle-related expenses for the benefit of Defendants;

c. Whether Defendants collected records relating to Plaintiffs and the Rule 23 Class members' actual vehicle expenses;

d. Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants sufficiently reimbursed Plaintiffs and the Rule 23 Class members as required by state wage and hour laws;

g. Whether, after accounting for un- or under-reimbursed expenses, Defendants failed to pay the minimum wage required by law;

h. Whether Defendants took unlawful or unauthorized deductions from the wages of Plaintiffs and the Rule 23 Class members;

i. Whether Plaintiffs and the Rule 23 Class members were subject to a common expense reimbursement policy;

j. Whether Plaintiffs and the Rule 23 Class members were actually paid the wage rate they were promised by Defendants;

k. Whether Plaintiffs and the Rule 23 Class members conferred a benefit on Defendants by providing Defendants with a fleet of vehicles to use in their business;

l. Whether Defendants avoided business expenses that they would have otherwise been required to cover but for Plaintiffs and the Rule 23 Class members providing cars to use to make deliveries;

m. How much it would have cost Defendants to operate their business but for Plaintiffs and the Rule 23 Class members providing cars to use to make deliveries;

n. Whether Defendants were aware of the benefit that was being conferred on them by Plaintiffs and the Rule 23 Class members;

o. The nature and extent of class-wide injury and the measure of damages for those injuries

358. In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Classes they seek to represent, Plaintiffs will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

359. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

360. The FLSA Collective worked dual jobs—one that produced tips, and another that did not.

361. The FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for hours worked making deliveries.

362. Defendants paid the FLSA Collective an hourly payrate at or close to minimum wage for hours worked on the road making deliveries.

363. Defendants required and continue to require the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse the FLSA Collective for said expenses.

364. Defendants did not reimburse the FLSA Collective for the costs of the tools the FLSA Collective, i.e., their actual vehicle expenses.

365. Defendants did not reimburse the FLSA Collective for the purchase price of their car, for parts, for maintenance or repair costs, for gas, for storage, for damage to the car, for diminution in value of the car, or for the time it took Plaintiffs and the FLSA Collective to maintain their vehicles.

366. Defendants reimbursed the FLSA Collective using either a per-delivery or per-mile reimbursement rate that failed to cover all of the FLSA Collective's vehicle expenses.

367. As a result of the un- or under-reimbursed expenses incurred by the FLSA Collective, Defendants do not pay the FLSA Collective's wages free and clear.

368. The FLSA Collective's un- or under-reimbursed vehicle expenses function as a deduction from the wages of the FLSA Collective.

369. After subtracting the un- or under-reimbursed vehicle expenses from the wages paid to the FLSA Collective, Defendants have failed to pay minimum wage or overtime wages.

370. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of the FLSA Collective.

371. The FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage and overtime as required by law.

372. As a result of Defendants' willful violations, the FLSA Collective is entitled to damages, including, but not limited to, unpaid minimum wages, unpaid overtime wages, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Virginia Minimum Wage Act ("VMWA")**
**Va. Code Ann. § 40.1-28**
**(On Behalf of Plaintiffs and the Virginia Class)**

373. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

374. Defendants were required to pay Plaintiffs and the Virginia Class minimum wage for all hours worked.

375. Defendants fail to pay the Virginia Class members all minimum wages owed.

376. Defendants fail to actually pay the Virginia Class members minimum wage after accounting for deductions from their wages in the form of unreimbursed vehicle expenses.

377. Defendants take unauthorized deductions from the wages of the Virginia Class.

378. Defendants' conduct and practices, as described herein, are willful and intentional.

379. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

380. By reason of the unlawful acts alleged herein, Defendants are liable to the Virginia Class members for unpaid wages, interest at 8% of unpaid wages, costs, and reasonable attorneys' fees.

**Count 3**
**Failure to Timely Pay Wages – Virginia Wage Payment Act ("VWPA")**
**Va. Code Ann. § 40.1-29**
**(On Behalf of Plaintiffs and the Virginia Class)**

381. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

382. Because they required the Virginia Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to timely pay wages to the Virginia Class.

383. By not paying the Virginia Class proper wages at least once every two weeks or twice in each month for time worked, Defendants have violated the VWPA. Va. Code Ann. § 40.1-29(A).

384. As a result of Defendants' violations, the Virginia Class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, damages in the amount of triple the amount of unpaid wages, 8% interest accruing from the date wages were due, costs, and attorneys' fees.

**Count 4**
**Unlawful Withholding of Wages – Virginia Wage Payment Act ("VWPA")**
**Va. Code Ann. § 40.1-29**
**(On Behalf of Plaintiffs and the Virginia Class)**

385. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

386. Because they required the Virginia Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants unlawfully withheld wages earned by the Virginia Class.

387. By withholding reimbursement for the Virginia Class's work-related vehicle expenses, Defendants have violated the VWPA. Va. Code Ann. § 40.1-29(C).

388. As a result of Defendants' violations, the Virginia Class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, damages in the amount of triple the amount of unpaid wages, 8% interest accruing from the date wages were due, costs, and attorneys' fees.

**Count 5**
**Virginia Unjust Enrichment**
**(On Behalf of Plaintiffs and the Virginia Class)**

389. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

390. The Virginia Class members have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

391. Defendants are aware of and have accepted the benefit conferred on them by Virginia Class members.

392. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Virginia Class members without commensurate compensation.

393. The Virginia Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 3 years preceding the filing of the original complaint and the date of final judgment in this matter.

**Count 6**
**Georgia Unjust Enrichment**
**(On Behalf of Plaintiffs and the Georgia Class)**

394. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten

herein.

395. The Georgia Class members have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

396. Defendants are aware of and have accepted the benefit conferred on them by Georgia Class members.

397. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Georgia Class members without commensurate compensation.

398. The Georgia Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the four years preceding the filing of the original Complaint to the date of final judgment in this matter.

**Count 7**
**Texas Unjust Enrichment**
**(On Behalf of Plaintiffs and Texas Class)**

399. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

400. The Texas Class members have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

401. Defendants are aware of and have accepted the benefit conferred on them by Texas Class members.

402. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Texas Class members without commensurate compensation.

403. The Texas Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 2 years preceding the filing of the original Complaint to the date of final judgment in this matter.

**Count 8**
**Failure to Pay Minimum Wages**
**Florida Constitution, Art. X, Section 24**
**(On Behalf of Plaintiffs and the Florida Class)**

404. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

405. Defendants paid the Florida Class below minimum wage for the hours they worked by requiring them to cover vehicle expenses and other job-related expenses.

406. Defendants ostensibly paid the Florida Class at or close to minimum wage for the hours they worked on the road making deliveries.

407. Because Defendants required the Florida Class to pay for vehicle expenses and other job-related expenses out of pocket, Defendants failed to pay the Florida Class minimum wage.

408. By not paying the Florida Class at least minimum wage for each hour worked, Defendants have violated the Florida Constitution, Art. X, Section 24.

409. As a result of Defendants' violations, the Florida Class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in damages under Section 24, costs, and attorneys' fees.

**Count 9**
**Florida Unjust Enrichment**
**(On Behalf of Plaintiffs and the Florida Class)**

410. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

411. The Florida Class members have conferred a benefit on Defendants by using their own cars to work for Defendants.

412. The benefits include (but are not limited to) money saved on labor costs, additional sales by virtue of lower pizza prices, higher profits, and higher value for franchises.

413. Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

414. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Florida Class without commensurate compensation.

415. The Florida Class members are entitled to equitable restitution of all benefits conferred in the four years prior to the original Complaint to the date of final judgment in this matter.

**Count 10**
**Violation of the South Carolina Payment of Wages Act**
**S.C. Code Ann. 41-10-10, *et seq*.**
**(On Behalf of Plaintiffs and the South Carolina Class)**

416. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

417. Defendants failed to pay all wages due to the South Carolina Class in a timely manner in violation of S.C. Code. Ann. 41-10-40(D).

418. Defendants illegally deducted amounts from the wages of the South Carolina Class without providing proper notice as required by S.C. Code Ann. § 41-10-30(A) in violation of § 41-10-40.

419. Defendants diverted or withheld portions of wages of the South Carolina Class in violation of S.C. Code Ann. 41-10-40(C).

420. Defendants' delivery driver compensation and reimbursement policies violate the SCPWA.

421. As a result of Defendants' violations of the SCPWA, the South Carolina Class members are entitled to three times the full amount of unpaid wages, withheld or diverted wages, and unauthorized deductions, plus attorneys' fees, costs and civil penalties.

**Count 11**
**South Carolina Unjust Enrichment**
**(On Behalf of Plaintiffs and the South Carolina Class)**

422. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

423. The South Carolina Class members have conferred a benefit on Defendants by using their own cars to work for Defendants.

424. Defendants are aware of and have accepted the benefit conferred on them by the South Carolina Class.

425. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the South Carolina Class members without commensurate compensation.

426. The South Carolina Class members are entitled to equitable restitution of the benefits they conferred on Defendants from the date three years before the filing of the original Complaint to the date of final judgment in this matter.

**Count 12**
**Failure to Pay Minimum Wages**
**N.C. Gen. Stat. 95-25.6**
**(On Behalf of Plaintiffs and the North Carolina Class)**

427. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

428. The North Carolina Wage and Hour Act states that every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. N.C. Gen. Stat. 95-25.6.

429. Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

430. The North Carolina Class members are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

431. As a result of Defendants' willful violations, the North Carolina Class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 13**
**Withholding of Wages**
**N.C. Gen. Stat. §95-25.8**
**(On Behalf of Plaintiffs and the North Carolina Class)**

432. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

433. The North Carolina Wage and Hour Act states than an employer is permitted to withhold a portion of an employee's wages provided that the employer has written authorization from the employee which is signed on or before the payday for the pay periods for which the deduction is made; indicated the reason for the deduction; and states the actual dollar amount of wages which shall be deducted from one or more paychecks. *See* N.C. Gen. Stat. 95-25.8(a)(2).

434. Defendants have not obtained written authorization from the North Carolina Class to withhold a portion of their wages to cover their delivery-related expenses, which constitute *de facto* deductions from pay.

435. Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

436. The North Carolina Class members are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

437. As a result of Defendants' willful violations, the North Carolina Class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 14**
**North Carolina Unjust Enrichment**
**(On Behalf of Plaintiffs and the North Carolina Class)**

438. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

439. The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

440. Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

441. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

442. The North Carolina Class members are entitled to equitable restitution of the benefits they conferred on Defendants from the date three years before the filing of the original Complaint to the date of final judgment in this matter.

**Count 15**
**Failure to Pay Minimum and Overtime Wages**
**N.M. Stat. §50-4-21, *et seq.***
**(On Behalf of Plaintiffs and the New Mexico Wage Class)**

443. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

444. Defendants are required to pay the New Mexico Wage Class minimum wage for all hours worked and time-and-a-half their regular hourly rate for hours worked in excess of 40 per workweek.

445. Defendants failed to pay the New Mexico Wage Class members all minimum wages owed.

446. Defendants took unauthorized deductions from the wages of the New Mexico Wage Class.

447. Defendants' conduct and practices, as described herein, are willful and intentional.

448. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

449. By reason of the unlawful acts alleged herein, Defendants are liable to the New Mexico Wage Class members for unpaid wages, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 16**
**Unlawful Deductions from Wages**
**N.M. Stat. Ann. 50-4-2**
**(On Behalf of Plaintiffs and the New Mexico Wage Class)**

450. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

451. New Mexico law prohibits employers from taking any deductions from the wages of employees unless those deductions are lawful and/or authorized in a written contract of hiring entered into at the time of hiring by the employer and employee.

452. Defendants took unauthorized deductions from delivery drivers' wages in the form of unreimbursed vehicle expenses from the New Mexico Wage Class.

453. The members of the New Mexico Wage Class did not authorize Defendants to take deductions from their wages in the form of unreimbursed vehicle expenses.

454. Defendants' conduct and practices, as described herein, are willful and intentional.

455. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

456. By reason of the unlawful acts alleged herein, Defendants are liable to the New Mexico Wage Class members for unlawful deductions, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 17**
**Untimely Payment of Wages**
**N.M. Stat. Ann. 50-4-2**
**(On Behalf of Plaintiffs and the New Mexico Wage Class)**

457. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

458. New Mexico law requires that employers pay wages in full to their employees on regular paydays, not more than 16 days apart, with payment for services rendered during the first 15 days of a month being paid in full no later than the 25th of the month, and payment for services rendered from the 16th to the end of the month being paid in full no later than the 10th of the following month.

459. By failing to properly reimburse for vehicle expenses, Defendants failed to pay the New Mexico Wage Class their wages in full on regular paydays.

460. By reason of the acts alleged herein, Defendants failed to timely pay all wages due to the New Mexico Wage Class.

461. Defendants' conduct and practices, as described herein, are willful and intentional.

462. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

463. By reason of the unlawful acts alleged herein, Defendants are liable to the New Mexico Wage Class members for unpaid wages, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 18**
**New Mexico Unjust Enrichment**
**(On Behalf of Plaintiffs and the New Mexico Unjust Enrichment Class)**

464. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

465. The New Mexico Unjust Enrichment Class members have conferred a benefit on Defendants by using their own cars to work for Defendants.

466. Defendants are aware of and have accepted the benefit conferred on them by the New Mexico Unjust Enrichment Class.

467. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the New Mexico Unjust Enrichment Class without commensurate compensation.

468. The New Mexico Unjust Enrichment Class members are entitled to equitable restitution of the benefits they conferred on Defendants.

**Count 19**
**Failure to Pay Minimum Wages**
**Iowa Code § 19.D.1**
**(On Behalf of Plaintiffs and the Iowa Wage Class)**

469. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

470. Defendants are required to pay the Iowa Wage Class minimum wage for all hours worked and time-and-a-half their regular hourly rate for hours worked in excess of 40 per workweek.

471. Defendants fail to pay the Iowa Wage Class members all minimum wages owed.

472. Defendants take unauthorized deductions from the wages of the Iowa Wage Class.

473. Defendants' conduct and practices described herein are willful and intentional.

474. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

475. By reason of the unlawful acts alleged herein, Defendants are liable to the Iowa Wage Class members for unpaid wages, additional damages in an amount equal to the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 20**
**Untimely Payment of Wages**
**Iowa Code §91A, *et. seq.***
**(On Behalf of Plaintiffs and the Iowa Wage Class)**

476. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

477. Iowa law requires that employers pay wages in full to their employees on regular paydays, not more than 14 days apart, with regular paydays not to exceed twelve days, excluding Sundays and legal holidays, after the end of the period in which the wages were earned.

478. By failing to properly reimburse for vehicle expenses, Defendants failed to pay the Iowa Wage Class their wages in full on regular paydays.

479. By reason of the acts alleged herein, Defendants failed to timely pay all wages due to the Iowa Wage Class.

480. Defendants' conduct and practices, as described herein, are willful and intentional.

481. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

482. By reason of the unlawful acts alleged herein, Defendants are liable to the Iowa Wage Class members for unpaid wages, additional damages in an amount equal to the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 21**
**Iowa Unjust Enrichment**
**(On Behalf of Plaintiffs and the Iowa Unjust Enrichment Class)**

483. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

484. The Iowa Unjust Enrichment Class members have conferred a benefit on Defendants by using their own cars to work for Defendants.

485. Defendants are aware of and have accepted the benefit conferred on them by the Iowa Enrichment Class.

486. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Iowa Unjust Enrichment Class without commensurate compensation.

487. The Iowa Unjust Enrichment Class members are entitled to equitable restitution of the benefits they conferred on Defendants.

**Count 22**
**Failure to Pay Minimum Wages**
**C.R.S. 8-6-101, *et seq*. and 7 CCR 1103-1:1, et seq.,**
**(On Behalf of Plaintiffs and the Colorado Wage Class)**

488. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

489. Defendants are required to pay the Colorado Wage Class minimum wage for all hours worked and time-and-a-half their regular hourly rate for hours worked in excess of 40 per workweek.

490. Defendants fail to pay the Colorado Wage Class all minimum wages owed under the CWA and CMWA.

491. Defendants take unauthorized deductions from the Colorado Wage Class.

492. Defendants' conduct and practices, as described herein, were willful and intentional.

493. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

494. By reason of the unlawful acts alleged herein, Defendants are liable to the Colorado Wage Class for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment

interest for all violations which occurred within the three years prior to the filing of the Complaint.

**Count 23**
**Untimely Payment of Wages C.R.S. 8-4-101, *et seq*.,**
**(On Behalf of Plaintiffs and the Colorado Wage Class)**

495. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

496. Colorado law requires that employers pay wages in full to their employees on regular paydays of no greater than one month or thirty days, whichever is longer, with regular paydays not to exceed ten days, following the close of each pay period.

497. By failing to properly reimburse for vehicle expenses, Defendants failed to pay the Colorado Wage Class their wages in full on regular paydays.

498. By reason of the acts alleged herein, Defendants failed to timely pay all wages due to the Colorado Wage Class.

499. Defendants' conduct and practices, as described herein, were willful and intentional.

500. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

501. By reason of the unlawful acts alleged herein, Defendants are liable to the Colorado Wage Class members for unpaid wages, statutory penalties, costs, reasonable attorneys' fees, and pre-judgment interest from the date these violations began until the date of final judgment in this matter.

**Count 24**
**Unpaid Rest Breaks**
**7 CCR § 1103-1, *et seq*.**
**(On Behalf of Plaintiffs and the Colorado Wage Class)**

502. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

503. The Colorado Wage Class is entitled to rest breaks for a period of 10 minutes for each four hours of work, or major fractions thereof.

504. Defendants did not permit the Colorado Wage Class to take rest breaks.

505. Defendants' conduct and practices, as described herein, were willful and intentional.

506. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

507. By reason of the unlawful acts alleged herein, Defendants are liable to the Colorado Wage Class for at least 10 minutes in unpaid wages for each shift exceeding 2 hours, statutory penalties, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

**Count 25**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Colorado Unjust Enrichment Class)**

508. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

509. The Colorado Unjust Enrichment members have conferred a benefit on Defendants by using their own cars to work for Defendants.

510. Defendants are aware of and have accepted the benefit conferred on them by the Iowa Enrichment Class.

511. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Colorado Unjust Enrichment Class without commensurate compensation.

**512.** The Colorado Unjust Enrichment Class members are entitled to equitable restitution of the benefits they conferred on Defendants.

**WHEREFORE**, Plaintiffs pray for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiffs as representatives of the Georgia Class, the Texas Class, the Florida Class, the South Carolina Class, the North Carolina Class, the New Mexico Wage Class, the New Mexico Unjust Enrichment Class, the Virginia Class, the Iowa Wage Class, the Iowa Unjust Enrichment Class, the Colorado Wage Class, and the Colorado Unjust Enrichment Class, and counsel of record as Class Counsel of the Rule 23 Classes.

E. A declaratory judgment that the practices complained of herein are unlawful under state and federal law.

F. An award of unpaid minimum wages, unreimbursed vehicle and other business-related expenses, improperly claimed tip credits, unlawful deductions, withheld or diverted wages, untimely paid wages due under the wage laws of the states of Florida, South Carolina, North Carolina, Virginia, New Mexico, Iowa, and Colorado.

G. An award of restitution as a result of unjust enrichment to the Georgia Class, the Texas Class, the Florida Class, the North Carolina Class, the South Carolina Class, the Virginia Class, the New Mexico Unjust Enrichment Class, the Iowa Unjust Enrichment Class, and the Colorado Unjust Enrichment Class.

H. A declaratory judgment that Defendants' delivery drivers must be reimbursed for the actual costs of their delivery-related expenses, with associated recordkeeping, or at the IRS standard business mileage rate for each mile driven.

I. An award of prejudgment and post-judgment interest.

J. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K. Such other legal and equitable relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY AS TO ALL TRIABLE ISSUES**

Respectfully submitted,

*/s/William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm PC
bhommel@hommelfirm.com
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

Andrew Biller (*pro hac vice forthcoming*)
Andrew Kimble (*pro hac vice forthcoming*)
Laura Farmwald (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

*Counsel for Plaintiffs and the putative class*

**JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/William S. Hommel, Jr.*
William S. Hommel, Jr.